IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

TONY BURNETT, et al.,

    **Plaintiffs,**

v.                                                Case No.:  3:13-cv-14207

FORD MOTOR COMPANY,

    **Defendant.**

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Ford Motor Company's ("Ford") Motion to Compel Discovery. (ECF No. 122). Plaintiffs have filed a response in opposition to the motion, (ECF No. 148), and Ford has replied. (ECF No. 151). Having considered the arguments of the parties, the Court **GRANTS**, in part, and **DENIES**, in part, the motion to compel.

**I.**    **Relevant Background**

Plaintiffs in this action are purchasers of one or more vehicles manufactured by Ford between 2002 and 2010 that were equipped with an electronic throttle control system. Plaintiffs claim that although this particular type of throttle control system is prone to episodes of sudden unintended acceleration, Ford failed to equip the affected vehicles with an adequate fail-safe mechanism to mitigate the unwanted acceleration. Plaintiffs have sued individually and on behalf of others similarly situated.

In late July, Ford served discovery requests on seven plaintiffs, including Samuel Hairston and Mary Phippen. Responses were supplied by Hairston and Phippen in September, which Ford found to be deficient. Thereafter, the parties met and conferred, but were unable to resolve all of their differences. Accordingly, Ford filed the instant motion seeking an order compelling Hairston and Phippen (hereinafter "the plaintiffs") to serve full and complete responses to the discovery requests.

## II. Controlling Legal Principles

Federal Rule of Civil Procedure 26(b)(1) permits a party to obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defenses. "While the Federal Rules of Civil Procedure do not define 'relevant information,' the Federal Rules of Evidence define it as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Boykin Anchor Co., Inc. v. Wong,* No. 5:10–CV–591–FL, 2011 WL 5599283, *2 (E.D.N.C. November 17, 2011), *citing United Oil Co., v. Parts Assocs., Inc,* 227 F.R.D. 404, 409 (D.Md. 2005). However, admissibility under the Federal Rules of Evidence is not the guideline for relevancy in the context of discovery. Relevancy in discovery is broader in scope, because "[d]iscovery is of broader scope than admissibility, and discovery may be had of inadmissible matters." *King v. Conde,* 121 F.R.D. 180, 194 (E.D.N.Y. 1988); *See also Carr v. Double T Diner,* 272 F.R.D.431, 433 (D.Md.) ("The scope of relevancy under discovery rules is broad, such that relevancy encompasses any matter that bears or may bear on any issue that is or may be in the case. For purposes of discovery, information is relevant, and thus discoverable, if it '"bears on, or ... reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case. Although 'the

2

pleadings are the starting point from which relevancy and discovery are determined … [r]elevancy is not limited by the exact issues identified in the pleadings, the merits of the case, or the admissibility of discovered information.'" *Kidwiler v. Progressive Paloverde Ins. Co.,* 192 F.R.D. 193, 199 (N.D.W.Va. 2000) (internal citations omitted). Depending upon the needs of the particular case, "the general subject matter of the litigation governs the scope of relevant information for discovery purposes." *Id.* The party resisting discovery, not the party seeking discovery, bears the burden of persuasion. *See Kinetic Concepts, Inc. v. ConvaTec Inc.,* 268 F.R.D. 226, 243–44 (M.D.N.C. 2010)(citing *Wagner v. St. Paul Fire & Marine Ins. Co.,* 238 F.R.D. 418, 424–25 (N.D.W.Va. 2006).

Simply because information is discoverable under Rule 26, however, "does not mean that discovery must be had." *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) (citing *Nicholas v. Wyndham Int'l, Inc.,* 373 F.3d 537, 543 (4th Cir. 2004)). For good cause shown under Rule 26(c), the court may restrict or prohibit discovery that seeks relevant information when necessary to protect a person or party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). To succeed under the "good cause" standard of Rule 26(c), the party resisting discovery must make a particularized showing as to why a protective order should issue. *Baron Fin. Corp. v. Natanzon,* 240 F.R.D. 200, 202 (D.Md. 2006). Conclusory and unsubstantiated allegations are simply insufficient to support an objection based on the grounds of annoyance, burdensomeness, oppression, or expense. *Convertino v. United States Department of Justice,* 565 F. Supp.2d 10, 14 (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome, and oppressive by submitting

3

affidavits or other evidence revealing the nature of the burden); *Cory v. Aztec Steel Building, Inc.,* 225 F.R.D. 667, 672 (D.Kan. 2005) (the party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection); *Bank of Mongolia v. M & P Global Financial Services, Inc.,* 258 F.R.D. 514, 519 (S.D.Fla. 2009) ("A party objecting must explain the specific and particular way in which a request is vague, overly broad, or unduly burdensome. In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome").

Furthermore, Rule 26(b)(2)(C) requires the court, on motion or on its own, to limit the frequency and extent of discovery, when (1) "the discovery sought is unreasonably cumulative or duplicative;" (2) the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (3) "the party seeking the discovery has already had ample opportunity to collect the requested information by discovery in the action;" or (4) "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). This rule "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Lynn v. Monarch Recovery Management, Inc.,* 285 F.R.D. 350, 355 (D. Md. 2012) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 523 (D. Md. 2010)). To insure that discovery is sufficient, yet reasonable, district courts have "substantial latitude to fashion protective orders." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

### III. <u>Discussion</u>

At the time the motion to compel was filed, the plaintiffs had unresolved objections to twelve interrogatories and twenty-six requests for production of documents. However, according to the response and reply memoranda filed by the parties, only five interrogatories and nine production requests remain in dispute.

### *Interrogatory Nos. 1 and 18; Request No. 15*

In Interrogatory No. 1, Ford asks for the names and addresses of all persons with knowledge of any relevant facts concerning the plaintiffs' claims, including anyone who has operated or ridden in the subject vehicles, anyone who has inspected, serviced, or repaired the vehicles, and anyone with knowledge of the plaintiffs' decisions to purchase or lease the vehicles. In Interrogatory No. 18, Ford requests more detailed information about the work done by persons that have inspected, serviced, or repaired the subject vehicles, including descriptions of the work, dates of service or inspection, and any supporting paperwork. Finally, in Request No. 15, Ford asked the plaintiffs to produce copies of the documents reflecting repairs, service, and inspections. In response to all three discovery requests, the plaintiffs argue that the inquiries are so broad, they would be forced to collect and produce a voluminous amount of information, much of which would have little or no value in developing the claims and defenses in this litigation.

When evaluating whether an interrogatory is overly broad, the court must consider various factors, including the burden on the responding party to gather the information and the anticipated benefit of the information to the party propounding the request. *See Maren's v. Carrabba's Italian Grill, Inc.,* 196 F.R.D. 35, 37 (D.Md. 2000). Logically, the burden placed on the responding party should decrease in direct proportion to the decrease in likelihood that the discovery request will yield useful

information to the propounding party. Part of the court's task is to determine the level of discovery that is reasonable considering the needs of the particular case. In regard to Interrogatory No. 1, Ford clearly is entitled to know the identities and addresses of all persons with knowledge of the plaintiffs' claims, including any person present in the subject vehicles at the time of an alleged sudden unintended acceleration. In addition, Ford is entitled to know the names and addresses of individuals that regularly drive or ride in the vehicles. Accordingly, the plaintiffs are **ORDERED** to provide this information. However, the plaintiffs are not required to provide the name of every individual that has ever driven or ridden in the subject vehicles. As the plaintiffs point out, over the years, hundreds of people may have ridden in the subject vehicles depending upon how the plaintiffs use them. The likelihood is slight that individuals will have useful information if they have had only minimal contact with the vehicles and no exposure to a sudden acceleration event; therefore, the potential burden on the plaintiffs in compiling that information outweighs any anticipated benefit to Ford.

On the other hand, production of the names and addresses of persons repairing, servicing, or inspecting the vehicles is more likely to lead to useful information given that this lawsuit involves an alleged defect in the subject vehicles. Ford contends that episodes of sudden unexpected acceleration may occur from different causes. Ford also argues that the plaintiffs have not identified a single, definite defect in the subject vehicles upon which they base their claims. For these reasons, the overall condition of the vehicles, the scope and regularity of their maintenance, and the training and experience of the service providers may provide information highly relevant to Ford's defenses. The plaintiffs contend that the task of gathering the names of service providers and inspectors is overly burdensome, yet they have provided no specific or

6

particularized showing to support their objection. Accordingly, the undersigned finds the objection to be without merit and further finds that the plaintiffs have improperly limited their responses to service and repairs related to sudden acceleration, the electronic throttle control system, or for any purpose related to the allegations in the complaint. Accordingly, the plaintiffs are **ORDERED** to provide Ford with the names and addresses of all individuals, or entities (such as the names of garages, dealerships, outlets, stores) that have serviced or inspected the subject vehicles, as requested in Interrogatory No. 1. Considering that most consumers take their vehicles to the same local mechanics or entities for servicing and repairs, it is likely that collecting this information will not be unduly burdensome. In response to Interrogatory No. 18 and Request No. 15, the plaintiffs are required to make a good faith effort to answer the questions posed and conduct a reasonable and conscientious search to provide the documents requested. *See Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.* 246 F.R.D. 522, 529 (S.D.W.Va. 2007); *Jackson v. Kroblin Refrigerated Xpress, Inc.,* 49 F.R.D. 134, 137 (N.D.W.Va. 1970) ("A party to civil litigation in the federal system is under a severe duty to make every effort to obtain the requested information and, if, after an adequate effort, he is unsuccessful, his answer should recite in detail the attempts which he made to acquire the information.") Most mechanics keep records of their work. Garages, dealerships, and national chains generally maintain computerized records, which can be easily obtained and could be supplied under Fed. R. Civ. P. 33(d) in lieu of detailed answers. Therefore, the plaintiffs are further **ORDERED** to fully respond to Interrogatory No. 18 and Request No. 15.

### *Interrogatory No. 8; Request No. 21*

In Interrogatory No. 8 and Request No. 21, Ford seeks information regarding every written and oral communication the plaintiffs have had with any person regarding the subject vehicles, an alleged episode of unintended acceleration,[1] or alleged defect in the subject vehicles. Plaintiffs object on the ground of breadth, arguing that Ford should limit its query to "substantive" communications because the interrogatory and request, as written, require the plaintiffs to identify, detail, and provide documentation on even non-substantive, "passing" comments. The undersigned agrees that an interrogatory that asks for "any" communication regarding the subject vehicles is, on its face, overly broad; thus, a response to that particular query will not be compelled.

In its reply, Ford states that it is primarily interested in communications pertaining to alleged unintended acceleration events and purported defects related to the operation of the subject vehicles. Certainly, written communications pertaining to those topics are relevant and should not be especially burdensome to compile. Therefore, the plaintiffs are **ORDERED** to provide Ford with full responses to the requests regarding any such written communications. In regard to oral communications, the likelihood that the search will yield useful information decreases as the nature of the communication becomes less informal. For instance, a passing complaint about the vehicle made to a social friend has less evidentiary value than an oral report made to a law enforcement officer after a traffic accident attributed to an event of sudden and unexpected acceleration. Therefore, the plaintiffs shall not be required to go to the trouble of recollecting and recounting every passing comment

---

[1] Actually, the discovery requests repeatedly refer to "Occurrences." Unfortunately, neither party provided the Court with the definition of "Occurrences." However, the undersigned presumes the term "Occurrences" refers to episodes of unintended sudden acceleration.

made regarding events of unintended acceleration or purported defects in the subject vehicle. However, the plaintiffs are **ORDERED** to provide Ford with the requested information regarding any relevant oral communications made to a current or former Ford employee or Ford dealership or service shop; any government agency, employee or representative-including law enforcement agencies; any consumer group; and any news agency concerning events of unexpected acceleration or defects in the subject vehicles related to their operation.

### *Interrogatory No. 19*

Ford asks for information about additions, alterations, or modifications made to the subject vehicles since their purchase or lease. Plaintiffs object on the basis of breadth and burdensome, contending that they should only have to provide responses that are specific to sudden acceleration and the electronic throttle control system. Plaintiffs complain that the interrogatory forces them to collect information about matters as trivial as windshield wipers and gas caps; however, they provide no factual support for their burdensomeness argument. Moreover, the plaintiffs' argument on breadth is simply not persuasive. As Ford emphasizes, questions about additions, modifications, and alterations do not require the production of materials about simple repairs. In addition, the cause or causes of the alleged sudden acceleration episodes and the alleged defects in the subject vehicles are not, as yet, established. Therefore, information regarding changes made to the subject vehicles is highly relevant, and the plaintiffs are **ORDERED** to fully respond to the interrogatory.

### *Interrogatory No. 20*

In Interrogatory No. 20, Ford requests the current location of the subject vehicles and all parts thereof, as well as other information designed to establish the chain of

9

custody. The plaintiffs object on the grounds of breadth and burdensomeness, primarily due to Ford's use of the phrase "all parts thereof." They argue that this language requires them to track parts that were discarded as part of routine oil changes. Therefore, the plaintiffs seek some limitation on the interrogatory. Having reviewed Ford's reply, the Court **ORDERS** the plaintiffs to provide Ford with the chain of custody information related to the subject vehicles and their central component parts (which would exclude parts commonly removed and discarded as part of routine maintenance).

### *Request Nos. 8 and 9*

Ford seeks documents in production requests nos. 8 and 9 detailing inspections, testing, or examinations of the subject vehicles. The plaintiffs object on the grounds of burdensomeness, although they provide no factual showing to support that objection. They also contend that the requests are overly broad, as they encompass such events as annual state inspections, which plainly would not yield relevant information. The plaintiffs propose that the requests be limited to inspections involving sudden unexpected accelerations and the electronic throttle control system. Once again, discovery is broad and allows investigation into matters that "'bear on, or ... reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Kidwiler,* 192 F.R.D. at 199. Here, Ford alleges that a vehicle's sudden unintended acceleration may have many different causes. Although the plaintiffs allege that the acceleration is due to the electronic throttle control system, Ford apparently has not conceded that point. Furthermore, Ford argues that the plaintiffs have not agreed on the nature of the alleged defect in the subject vehicles. For that reason, Ford necessarily must conduct broad discovery on the vehicles, collecting both documents establishing the historical maintenance, repairs, modifications, and alterations of the vehicles, but

10

also any testing, examinations, and inspections performed. The undersigned agrees that under the current circumstances, Ford is entitled to some latitude in discovery of these issues. Accordingly, the plaintiffs are **ORDERED** to fully respond to the requests.

### *Request No. 3*

In Request No. 3, Ford seeks all photographs, diagrams, videotapes, films, slides, drawings, and similar materials relating to the claims. The plaintiffs object on the ground of breadth and burdensomeness, indicating that there could be thousands of photographs responsive to the request. Ford nonetheless insists that it is entitled to all of the photographs and films. Under Fed. R. Civ. P. 26(b)(2)(C)(i), the court may, on its own, limit the frequency or extent of discovery when the discovery sought is unreasonably cumulative or duplicative. Contrary to Ford's contention, it is not entitled to every film, photograph, videotape, or audiotape ever taken of the subject vehicles and the plaintiffs at the time of or after an event of unintended acceleration. Therefore, the plaintiffs are **ORDERED** to provide Ford with a representative sampling of the requested materials, if any such materials exist.

### *Request Nos. 11 and 12*

In these Requests for Production of Documents, Ford seeks warranty documents, owner's manuals, and extended service plans in the possession of the plaintiffs, as well as any written warranties, representations, promises, and agreements upon which the plaintiffs base their claims. The plaintiffs object on the ground of burdensomeness. Additionally, they argue that Ford already has access to these documents either because the documents are in Ford's custody and control, or because they are readily available in the public domain. Once again, the plaintiffs fail to make a particularized showing to support their burdensomeness objection. Furthermore, an objection based upon the

11

availability of the documents to Ford is not meritorious. *See Jackson v. West Virginia University Hospitals, Inc.,* Case No. 1:10-cv-107, 2011 WL 1831591, at *2 (N.D.W.Va. May 12, 2011) (citing cases) (holding that "courts have unambiguously stated that this exact objection is insufficient to resist a discovery request"). As the court points out in *Jackson,* even though information may be available in the public domain or in the possession of the propounding party, the benefits of requiring formal production of the documents through discovery requests are that:

> 1) both parties to the litigation will be working from the same documents at depositions or trial; 2) there is a certification by counsel that the document produced is the document on which he will rely whereas there is no such certification when the document is procured outside of discovery …; and 3) experts will be able to rely on a common set of documents in researching and formulating any opinion relevant to the litigation. In short, production through discovery … promotes clarity in the litigation context. These protections do not exist with respect to documents not produced in discovery.

*Id.* at *3. Ford is entitled to know what documents form the basis of the plaintiffs' claims. Accordingly, the plaintiffs are **ORDERED** to fully respond to these two requests.

### *Request No. 36*

Ford asks the plaintiffs to produce copies of their fee agreements with counsel in order to determine whether there are any conflicts of interest in this potential class action lawsuit. The plaintiffs refuse to produce the agreements on the ground of attorney/client privilege.

Ford explains that production of the fee agreements has become necessary due to two concrete concerns that have developed over the adequacy of the named plaintiffs in this action. First, Ford expresses concern that deposition testimony has revealed that some of the plaintiffs have "personal or familial relationships" with counsel of record.

Therefore, "for the purposes of assessing the adequacy of class representatives at the certification stage," the agreements are relevant to insure that no plaintiff has been offered preferential treatment. Second, Ford contends that there are 30 distinct subclasses of plaintiffs, all with conflicting interests. Without reviewing the retainer agreements, it will be difficult for Ford and the Court to "sort out which counsel are actually representing which Plaintiffs." However, Ford does not indicate any specific concerns or questions related to either Hairston or Phippen, the plaintiffs whose responses are the subject of the instant motion to compel.

The information that Ford seeks can be obtained at the depositions of the plaintiffs without need for the production of the fee agreements. Indeed, Ford should be able to explore all of its concerns with plaintiffs without invading the attorney/client privilege. If after exhausting this less invasive method of discovery, Ford is unable to collect the necessary information, then it may repetition the Court for production of the fee agreements. Nevertheless, at this time, the plaintiffs are not required to produce their agreements with counsel.

### *Request Nos. 37 and 39*

Ford requests copies of any social media posting and text messages sent or received by the plaintiffs relating to the subject vehicles and/or incidents of sudden acceleration. The plaintiffs object to the breadth of the requests, arguing that they require production of even the most trivial and irrelevant comments. The plaintiffs also indicate that they have searched for all responsive documents relating to occurrences of sudden acceleration in the subject vehicles and for those pertaining to the electronic throttle control system, but have not located any such documents. The undersigned agrees that the requests are phrased much too broadly; however, the plaintiffs' search

has been too circumscribed. Accordingly, the plaintiffs are **ORDERED** to also produce all text messages or social media postings that in any way concern an alleged defect affecting the operation of said vehicles.

## IV. Conclusion

Having fully considered the arguments, the Court **GRANTS**, in part, and **DENIES**, in part, Ford's motion to compel more complete discovery responses from Plaintiff Samuel Hairston and Plaintiff Mary Phippen as set forth herein. The plaintiffs shall serve their supplemental responses on Ford within **seven (7) days** of the date of this Order.

The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented party.

**ENTERED**: November 18, 2014

_____
Cheryl A. Eifert
United States Magistrate Judge