IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CHARLES JOHNSON, et al.,

TONY BURNETT, et al.,

and                                                      Case No.: 3:13-cv-06529
                                                         Case No.: 3:13-cv-14207
CHARLES T. BIRD, et al.,                                 Case No.: 3:13-cv-20976

      Plaintiffs,

v.

FORD MOTOR COMPANY,

      Defendant.

## MEMORANDUM OPINION and ORDER

Pending before the Court is Plaintiffs' Motion to Compel Defendant Ford Motor Company to Produce Documents Listed in its Supplemental ASO (Automotive Safety Office) Privilege Log and for Sanctions. (ECF No. 536).[1] Defendant Ford Motor Company ("Ford") has filed a memorandum in opposition to the motion, (ECF No. 551), and Plaintiffs have replied, (ECF No. 569). Plaintiffs' motion relates to 132 documents that Ford has claimed are shielded from discovery due to attorney-client privilege and attorney work-product immunity. (ECF No. 536-7 at 3-68). On August 18, 2015, the Court heard oral argument on the motion and ruled that the supplemental privilege log

---

[1] The docket numbers referenced in this Order are taken from the lead case, *Johnson v. Ford Motor Company,* Case No.: 3:13-cv-06529. Corresponding motions to compel and for sanctions are found at ECF No. 451 in *Burnett v. Ford Motor Company,* Case No.: 3:13-cv-14207, and ECF No. 410 in *Burd V. Ford Motor Company,* Case No.: 3:13-cv-20976.

1

supplied by Ford was insufficient under Federal Rule of Civil Procedure 26(b)(5)(A). (ECF No. at 591 at 51, 54). This memorandum opinion and order follows the Court's ruling and confirms that Plaintiffs' motion is **GRANTED** insofar as Ford will be required to again supplement its ASO privilege log with more detail describing the documents therein. Ford is **ORDERED** to provide the updated ASO privilege log to Plaintiffs within **ten (10) days** of the date of this Order. In addition, Plaintiffs are **GRANTED** reasonable fees and costs associated with bringing this motion. Plaintiffs are instructed to provide the requisite information regarding fees and costs within **fourteen (14) days** of the date of this Order.

## I.     Relevant Facts

These cases involve alleged events of sudden unintended acceleration in certain Ford vehicles manufactured between 2002 and 2010. In particular, Plaintiffs claim that their vehicles were equipped with defective electronic throttle control ("ETC") systems, which were not fault tolerant, resulting in open throttle events during which the drivers of the vehicles lacked the ability to control the throttles. Plaintiffs assert that the mechanisms causing the throttles to open unexpectedly were numerous, included electromagnetic interference, resistive shorts, and other voltage and resistance fluctuations, and that these issues were known to Ford. Despite having knowledge of the potential for sudden unexpected acceleration, Ford nonetheless failed to properly design the ETC system to correct the events when they occurred, and further neglected to install fail-safes, such as a Brake Over Accelerator system, which would allow the drivers to physically prevent or mitigate sudden acceleration.

In the course of discovery, Plaintiffs requested that Ford produce documents, including studies, reports, analyses, and memoranda, related to alleged unintended

acceleration in the class vehicles. (ECF No. 536-2 at 4, 28-29). Specifically at issue here, Plaintiffs requested that Ford produce the ASO reports and databases for any alleged unintended acceleration event in a Ford vehicle equipped with the ETC system. (*Id.* at 27-28). Plaintiffs also requested the production of documents related to any government correspondence or investigations concerning unintended accelerations in Ford vehicles equipped with the ETC system. (*Id.* at 33-34). On October 24, 2014, after producing non-privileged documents responsive to Plaintiffs' request, Ford provided Plaintiffs with a privilege log related to its 2010 ASO investigation into sudden unintended acceleration. (ECF No. 536-1 at 2-67; ECF No. 551 at 3). According to Ford, the ASO investigation was undertaken after the Wall Street Journal published an article in 2010 concerning complaints of sudden unintended acceleration in Ford vehicles. (ECF No. 551 at 2-3). The article was based on findings from vehicle owner questionnaires issued by the National Highway Transportation Safety Administration ("NHTSA"). (*Id.* at 2). At the time that the article was released, Ford asserts it was defending several lawsuits related to claims of unintended acceleration. (*Id.* at 2-3). According to Ford, in connection with those lawsuits and the article, Ford's Office of the General Counsel ("OGC") began an investigation of the vehicle owner questionnaires and Transportation Recall Enhancement, Accountability, and Documentation ("TREAD") Act submissions with the assistance of Ford's ASO. (*Id.* at 3).

On March 25, 2015, the parties met and conferred about the sufficiency of Ford's ASO privilege log. (ECF No. 536 at 2). According to Plaintiffs' counsel, they informed Ford's counsel that the ASO privilege log failed to adequately describe each document withheld by Ford. (*Id.*) Plaintiffs' counsel also questioned whether the "vast majority" of documents were indeed shielded from disclosure given their descriptions as

3

"spreadsheets" or "charts," which Plaintiffs interpreted to mean that those documents contained only "raw data or factual information." (*Id.*) In addition, Plaintiffs' counsel expressed their belief that the documents may not be privileged because they were not authored by an attorney or anyone at Ford's OGC, and the documents were sent to both attorneys and non-attorneys. (*Id.* at 2-3). The following day, Ford's counsel sent an e-mail confirming that Ford would review its privilege logs and determine whether additional information could be provided. (ECF No. 536-3 at 2). On April 6, 2015, Plaintiffs' counsel inquired about the status of Ford's counsel's privilege log review, and Ford's counsel replied the next day, confirming that Ford would supplement its privilege logs. (ECF No. 536-4 at 2; ECF No. 536-5 at 2). On April 15, 2015, the Court conducted a regularly scheduled telephonic discovery conference and addressed the privilege log issue. (ECF No. 536-6 at 3-4). Specifically, the undersigned noted that Federal Rule of Civil Procedure 26 requires a privilege log to contain enough information so that the receiving party may determine whether to challenge the privilege. (*Id.* at 4).

On May 19, 2015, Ford produced a supplemental ASO privilege log to Plaintiffs. (ECF No. 536-7 at 3-68). Distinguishing the supplemental privilege log from the original privilege log is the addition of file names for the documents listed. (*Id.*) By way of example, the first two rows of the privilege log appear as such:

| Doc. # | Bates Range | Document Date | Author | Recipient | Document Type | Description | Basis for Claim | File Name |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| 1 | 00001P | 3/09/10 | Ken Lilly (Ford's Automotive Safety Office) | John Mellen (Attorney, Ford's OGC) ... | Spreadsheets and Charts | Confidential communication containing an analysis prepared by Ford employees of the ASO for and at the request of Ford's OGC to assist Ford's attorneys with pending and anticipated litigation. | Attorney-Client Privilege and Attorney Work-Product Immunity | DI_ExportFile_All_DI_18.XLS |

(*Id.* at 3). All 132 documents listed in the privilege log are described in one of two ways—the first is the description in the table above, and the second states that the document is a "[c]onfidential communication containing an analysis prepared by authorized agent consultant of Ford for and at the request of Ford's Office of the General Counsel to assist Ford's attorneys with pending and anticipated litigation." (*Id.* at 3-68).

On June 9, 2015, Plaintiffs filed the instant motion to compel and for sanctions. (ECF No. 536). Plaintiffs contend that the supplemental ASO privilege log is deficient because Ford has failed to describe the documents listed in sufficient detail for Plaintiffs to determine whether the attorney-client privilege or attorney work-product protection applies. (*Id.* at 6-16). Plaintiffs argue that the addition of file names to the ASO privilege log does nothing to clarify whether the listed documents are indeed privileged. (*Id.* at 9). In support of their position, Plaintiffs point out that David Ott, a former member of Ford's ASO and the author or recipient of many of the listed documents, testified that he was unable to identify the particular documents based on their file names. (ECF No. 536-8 at 4-5). Mr. Ott also testified that, after the 2010 Wall Street Journal article was released, he worked with a team to analyze Ford's data related to unintended acceleration and he believed this work was part of the normal course of Ford's business.

5

(ECF No. 569-1 at 5). In addition, when asked if there was anyone at Ford that had been tasked with determining the cause of any alleged sudden unintended acceleration events, Mr. Ott stated that he was "not involved in litigation matters that the company [Ford] may be involved in." (*Id.* at 16).

With respect to attorney-client privilege, Plaintiffs assert that the types of documents withheld by Ford, such as charts or spreadsheets, likely contain "mere recitations or summaries of raw factual data," which Plaintiffs posit are not protected from disclosure. (ECF No. 536 at 11). Moreover, Plaintiffs argue that it is not clear that the purpose behind the creation of each withheld documents was to obtain legal advice, as the documents were not authored by an attorney and were sent to both attorneys and non-attorneys. (*Id.* at 14). As to Ford's claim of work-product protection, Plaintiffs notes that the privilege log offers no information that "the withheld documents contain the mental impressions, conclusions, opinions or legal theories of an attorney." (*Id.* at 15). In addition, Plaintiffs maintain that the privilege log fails to identify any specific litigation for which the documents were prepared. (*Id.* at 16). Plaintiffs ask the Court to compel the production of the documents listed in the supplemental ASO privilege log and argue that an award of expenses and sanctions is warranted under Federal Rules of Civil Procedure 37(a)(5)(A) and 37(b)(2). (*Id.* at 16-18).

In response, Ford asserts that the documents listed on the ASO privilege log were prepared in anticipation of litigation or in relation to ongoing litigation. (ECF No. 551 at 8). Ford claims that its in-house attorneys "engaged Ford's ASO and an outside consultant to conduct a review of and analyze" the vehicle owner questionnaires and TREAD Act submissions. (*Id.* at 9). Consequently, Ford argues that this analysis contained in the withheld documents is immune from disclosure as opinion work-

6

product.[2] (*Id.* at 9-10). Ford also maintains that, to the extent any of the withheld documents do not fall within the scope of opinion work-product, they meet the requirements for fact work-product, and Plaintiffs have not demonstrated substantial need for the withheld documents or that they are unable to obtain the substantial equivalent of the materials without undue hardship since the underlying data is publicly available. (*Id.* at 10-11). As for attorney-client privilege, Ford reiterates that the investigation was conducted by Ford's OGC, with the help of Ford's ASO and a consultant, to assist Ford's lawyers in defending pending and anticipated litigation related to claims of sudden unintended acceleration. (*Id.* at 14). With respect to the sufficiency of Ford's ASO privilege log, Ford contends that the log contains enough information for Plaintiffs to assess Ford's claim of privilege, including document date, author, recipient, and type, along with a description of the privilege claimed. (*Id.* at 17-18). In addition, Ford emphasizes that it informed Plaintiffs the withheld documents were created in connection with Ford's 2010 investigation into sudden unintended acceleration complaints. (*Id.* at 17). Finally, Ford insists that it has not waived any of its claimed privileges with regard to the withheld ASO investigation documents because it provided an adequate and timely privilege log. (*Id.* at 19).

## II. Discussion

Federal Rule of Civil Procedure 26(b)(1) provides that:

---

[2] Ford relies heavily on an affidavit prepared by Jay Logel, an attorney with Ford's OGC. The affidavit is attached as Exhibit C to Ford's response brief, but it does not mention the 2010 ASO investigation. (ECF No. 551-3 at 2-5). Ford subsequently submitted an affidavit from Mr. Logel at the August 18, 2015 motion hearing that discusses the 2010 investigation into sudden unintended acceleration, during which Ford's OGC purportedly enlisted Ford's ASO to assist in the investigation. (ECF No. 591 at 5). Ford should have realized and corrected its mistake in filing the incorrect affidavit much earlier than the hearing, particularly given Plaintiffs' observation in their reply brief that the affidavit attached to Ford's response brief did not support any of Ford's claims made in its brief. (ECF No. 569 at 6). As of the date of this opinion, Ford has not filed the correct affidavit from Mr. Logel; accordingly, it is not officially part of the record.

7

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

While the claims and defenses raised in the pleadings should be the focus of discovery, broader discovery is permitted when justified by the particular needs of the case. Fed. R. Civ. P. 26(b)(1), advisory committee notes (2000). In general, information is relevant, and thus discoverable, if it '"bears on, or ... reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case. Although 'the pleadings are the starting point from which relevancy and discovery are determined ... [r]elevancy is not limited by the exact issues identified in the pleadings, the merits of the case, or the admissibility of discovered information.'" *Kidwiler v. Progressive Paloverde Ins. Co.,* 192 F.R.D. 193, 199 (N.D.W.Va. 2000) (internal citations omitted). In many cases, "the general subject matter of the litigation governs the scope of relevant information for discovery purposes." *Id.* The party resisting discovery, not the party seeking discovery, bears the burden of persuasion. *See Kinetic Concepts, Inc. v. ConvaTec Inc.,* 268 F.R.D. 226, 243-44 (M.D.N.C. 2010)(citing *Wagner v. St. Paul Fire & Marine Ins. Co.,* 238 F.R.D. 418, 424-25 (N.D.W.Va. 2006)).

In this case, Ford has withheld documents based on claims of attorney-client privilege and work-product protection. Procedurally, when a party withholds information from discovery on the basis of attorney-client privilege or the work-product protection, the party is required to: (1) "expressly make the claim;" and (2) "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or

8

protected, will enable other parties to assess the claim."[3] Fed. R. Civ. P. 26(b)(5)(A). "A party can sustain this burden through a properly prepared privilege log that identifies each document withheld, and contains information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter. *Sky Angel US, LLC v. Discovery Communications, LLC,* 28 F.Supp.3d 465, 483 (D. Md. 2014). A party's conclusory assertion that a document is privileged is inadequate to meet the burden imposed by Rule 26(b)(5)(A). *See United Stationers Supply Co. v. King*, No. 5:11-CV-00728, 2013 WL 419346, at *2 (E.D.N.C. Feb. 1, 2013). Rather, the party's privilege log "must set forth specific facts which, taken as true, establish the elements of the privilege for each document for which privilege is claimed. A privilege log meets this standard, even if not detailed, if it identifies 'the nature of each document, the date of its transmission or creation, the author and recipients, the subject, and the privilege asserted.'" *Clark v. Unum Life Ins. Co. of Am.*, 799 F. Supp. 2d 527, 536 (D.Md. 2011) (quoting *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011)) (citation and footnote omitted); *see also Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 264 (D.Md. 2008) (noting that privilege logs typically require "information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter."); *and* Paul W. Grimm, Charles S. Fax, & Paul Mark Sandler, *Discovery Problems and Their Solutions,* 62-64 (2005) ("To properly demonstrate that a privilege exists, the privilege log should contain a brief

---

[3] Local Rule of Civil Procedure 37.1 requires "any claim of privilege or objection" to comply with Federal Rule of Civil Procedure 26(b)(5).

9

description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, and for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met for that document."). Regardless of how the privilege log is designed, its primary purpose is to "provide[] information about the nature of the withheld documents sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of the privilege." *Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. and N.J.*, No. 11 Civ. 6746, 2014 WL 2518959, at *5 (S.D.N.Y. June 4, 2014). Ultimately, the creation of an adequate privilege log requires a delicate balancing act—on the one hand, the withholding party must not supply too little or indecipherable information, and on the other, the withholding party must not reveal too much detail for fear that the privileged information itself may seep into the log.

Here, the problem with Ford's privilege log lies in its unsatisfactory document descriptions. Undeniably, the sufficiency of a privilege log's document description may be context driven; nevertheless, "vague and uninformative document descriptions do not satisfy" the standard for privilege log adequacy. *See In re McDonald*, No. 13-10661, 2014 WL 4365362, at *4 (Bankr. M.D.N.C. Sept. 3, 2014) (collecting cases). This is true for the simple reason that "when a party refuses to produce documents during discovery on the basis that they are privileged or protected, it has a duty to particularize that claim." *Victor Stanley, Inc.*, 250 F.R.D. at 254. "The focus is on the specific descriptive portion of the log, and not on conclusory invocations of the privilege or work-product rule, since the burden of the party withholding documents cannot be 'discharged by

10

mere conclusory or ipse dixit assertions.'" *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust, No. 1B,* 230 F.R.D. 398, 406 n. 14 (D. Md. 2205) (quoting *Golden Trade S.r.L. v. Lee Apparel Co.,* 1992 WL 367070, *5, 1992 Dist. LEXIS 17739 *12-13 (S.D.N.Y. 1992)).

Having stated the rule and the purpose of the privilege log, the undersigned concedes that courts have not been entirely consistent about the level of detail that is necessary to comply with Rule 26(b)(5)(A). For example, the United States Court of Appeals for the Second Circuit held that a privilege log was insufficient where the log contained a general claim of attorney-client privilege accompanied by the listed documents' dates, authors, recipients, and "cursory" descriptions, such as "Fax Re: DOL Findings," "Fax: Whistleblower article," or "Letter Re: Customer Orders with comment Re: Five Star Products." *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473-74 (2d Cir. 1996). Similarly, in *R.J. Reynolds Tobacco v. Philip Morris, Inc.*, the Third Circuit determined that a privilege log was inadequate where the description of the documents included "various daily log entries," "interoffice emails," or various miscellaneous "notes/correspondence." 29 F. App'x 880, 882 (3d Cir. 2002); *see also In re Gen. Instrument Corp. Sec. Litig.*, 190 F.R.D. 527, 530 (N.D. Ill. 2000) (finding that description of documents in log was not "even marginally specific" where document descriptions such as "Explanation re: Primestar Relationship," "NLC Employee Stock Options," and "Filing with SEC," were used). In contrast, other federal courts have found privilege logs to be sufficiently detailed where the logs contained the privilege asserted for each document along with the document date, author, recipient, type, and a description such as "[e]mail string containing confidential communications with outside counsel and in-house counsel regarding employee benefits and labor issues in [named]

11

transactions," or "[m]emo made at direction of counsel and sent to counsel for the purpose of seeing [*sic*] legal advice regarding medical procedure." *Spilker v. Medtronic, Inc.*, No. 4:13-CV-76-H, 2015 WL 1643258, at *6 (E.D.N.C. Apr. 13, 2015); *Vaughan v. Celanese Americas Corp.*, No. 3:06CV104-W, 2006 WL 3592538, at *3 (W.D.N.C. Dec. 11, 2006.

Notwithstanding the inconsistencies among courts, Ford's privilege log does not comply with Rule 26(b)(5)(A) because it fails to provide any concrete facts about the nature or subject matter of the withheld documents, which would allow an individual reviewing the log to assess the appropriateness of the privilege claim. Ford uses the same two document descriptions throughout the entire log, and those descriptions are essentially synonymous. More importantly, the descriptions are nothing more than conclusory statements as to the privileged nature of the documents. Contrary to Ford's position, more factual detail certainly could have been provided to describe the withheld documents without disclosing privileged information, as is evidenced by Ford's responsive brief wherein Ford explains the ASO investigation and ongoing litigation occurring at the time that the documents were created.[4] (ECF No. 551 at 2-4). Additional detail concerning the ASO investigation is also contained in the affidavit of Mr. Logel submitted at the August 18, 2015 motion hearing. However, none of this information was included in the supplemental privilege log. Furthermore, the inclusion of enigmatic file names offers little aid to the log recipient. Certain file names, such as the example listed above or "DI_UA.xls," "Appendix 1 Ford.pdf," "Appendix 14 Toyota.pdf," "Mar. 1.xls," and "Charts.xls," are incomprehensible and shed no light on Ford's claim that an

---

[4] There are many ways Ford could have expanded on their document descriptions. For example, Ford could have specifically identified the person requesting the analysis or information and the general subject matter of the analysis. Additionally, Ford could have named the specific litigation that any document was created in relation to, if applicable.

12

analysis subject to protection from discovery is contained within those files. (ECF No. 536-7 at 3, 21, 28, 33, 56). Indeed, Mr. Ott, who was questioned about logged documents that were attributed to him, was at a loss as to which of the documents he created were referenced by the privilege log. (ECF No. 536-8 at 4-5). When the author of a document cannot recognize it from the information provided in a privilege log, the only conclusion is that the log is inadequate and does not fulfill its purpose.

Moreover, as Plaintiffs point out, many of the withheld documents were created by non-attorneys within Ford's ASO, and then sent to attorneys within Ford's OGC. Mr. Ott testified to his belief that he and his team were assigned to perform the 2010 investigation into unintended acceleration as part of the normal course of Ford's business. (ECF No. 569-1 at 5); *see Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992) (noting that materials prepared in ordinary course of business "are not documents prepared in anticipation of litigation"); *Johnson v. Ford Motor Co.*, No. 3:13-cv-06529, 2015 WL 1650428, at *4 (S.D.W.Va. Apr. 14, 2015) (recognizing that, under both West Virginia and Michigan law, not all communications between attorney and client are privileged, only those made for purpose of obtaining legal advice); *Apple, Inc. v. Samsung Electronics, Co., Ltd,* 306 F.R.D. 234 (N.D. Cal. 2015) (noting that simply because an attorney is involved in a communication does not make the communication privileged, nor does a single email of a legal nature "privilege the entire email thread."). Obviously then, reasonable questions exist as to Ford's claims of attorney-client privilege and work-product protection in light of the plain facial inadequacy of the privilege log and Mr. Ott's testimony. Ford should have recognized these issues and answered them with a more detailed privilege log or some type of extrinsic evidence further explaining the basis for withholding the listed

ASO documents *before* Plaintiffs filed the instant motion to compel. Even now, Mr. Logel's affidavit does not entirely quell Plaintiffs' reasonable skepticism as to the non-disclosure of some of the listed documents; particularly, in light of Mr. Ott's testimony. Therefore, after having reviewed the May 2015 supplemental ASO privilege log, the Court **FINDS** that the log's document descriptions do not enable Plaintiffs "to make an intelligent determination about the validity of the assertion of the privilege" and thus are insufficient. *Auto. Club of N.Y., Inc.*, 2014 WL 2518959, at *5.

"When a party provides an inadequate or untimely privilege log, the Court may choose between four remedies: (1) give the party another chance to submit a more detailed log; (2) deem the inadequate log a waiver of the privilege; (3) inspect in camera all of the withheld documents; and (4) inspect in camera a sample of the withheld documents." *Nationwide Mut. Fire Ins. Co. v. Keit, Inc.,* 2015 WL 1470971, at *9 (M.D. Fla. Mar. 31, 2015) (citing *NLRB v. Jackson Hospital Corp.,* 257 F.R.D. 302, 307 (D.D.C. 2009*).* In this case, Plaintiffs urge the Court to find that Ford has forfeited its claim of privilege as to all of the ASO documents on the log. Certainly, that sanction has been used in this circuit. *See Mezu v. Morgan State Univ.,* 269 F.R.D. 565, 577 (D.Md. 2010) ("Absent consent of the adverse party, or a Court order, a privilege log (or other communication of sufficient information for the parties to be able to determine whether the privilege applies) must accompany a written response to a Rule 34 document production request, and a failure to do so may constitute a forfeiture of any claims of privilege."). However, privilege waiver is not automatic. *See Smith v. James C. Hormel Sch. of Va. Inst. of Autism*, No. 3:08cv00030, 2010 WL 3702528, at *4 (W.D. Va. Sept. 14, 2010). "Given the sanctity of the attorney-client privilege and the seriousness of privilege waiver, courts generally find waiver only in cases involving unjustified delay,

inexcusable conduct and bad faith." *Id.* at *5 (collecting cases); *see also Westfield Ins. Co. v. Carpenter Reclamation, Inc.*, 301 F.R.D. 235, 247-48 (S.D.W.Va. 2014) (recognizing same).

Having concluded that Ford's privilege log does not meet the dictates of Rule 26(b)(5)(A), the undersigned must consider whether the "extreme sanction of waiver" is appropriate in this case. *See Westfield Ins. Co.*, 301 F.R.D. at 248. As noted above, federal courts have typically found waiver appropriate where unjustified delay, inexcusable conduct, or bad faith are present. *Id.* at 247. While Ford should have realized its document descriptions were inadequate, the undersigned finds that the current circumstances do not justify application of the harshest remedy. Accordingly, the Court **FINDS** that waiver of privilege related to the withheld ASO investigation documents is not an appropriate sanction at this juncture. Instead, the Court **ORDERS** Ford to supplement the ASO privilege log with more detailed descriptions of the withheld documents in accordance with Federal Rule of Civil Procedure 26(b)(5)(A), so that Plaintiffs may "make an intelligent determination about the validity of the assertion of the privilege," by Ford. *Auto. Club of N.Y., Inc.*, 2014 WL 2518959, at *5. Ford is **ORDERED** to provide the updated ASO privilege log to Plaintiffs within **ten (10) days** of the date of this opinion. Because the Court is ordering Ford to supplement its privilege log, it would be premature to address Plaintiffs' arguments that the withheld documents are not privileged based on the log as it now exists. Moreover, Ford's new supplemental privilege log should provide Plaintiffs with an opportunity to focus their attention on challenging Ford's claim of privilege in relation to specific withheld documents, rather than arguing all of the 132 documents are not privileged for various reasons. *See* (ECF No. 536-6 at 4). Ford is cautioned that a failure to properly

15

supplement the log will likely result in a finding that it has forfeited its privilege claims. Ford is also warned that the failure to provide future privilege logs, which comply with the standards and purpose of Rule 26(b)(5)(A), may also result in a waiver of privilege.

Finally, Plaintiffs request sanctions under Fed. R. Civ. P. 37(b)(2), citing to *Westfield Ins. Co.,* 301 F.R.D. at 247 and Rule 26 Advisory Committee Notes, 1993 Amendments, which state: "[A] party must notify other parties if it is withholding materials otherwise subject to disclosure … because it is asserting a claim of privilege or work product protection. To withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." In this Court's view, an award of Rule 37(b)(2) sanctions for failing to comply with Rule 26(b)(5)(A) is most appropriate when (1) documents have been withheld without *any* notice or privilege log; (2) a party has been ordered by the court to correct an inadequate privilege log and fails to comply with the order; or (3) the circumstances surrounding the production of an insufficient privilege log are particularly troubling or egregious and thus merit an award of sanctions beyond the reasonable fees and costs allowed under Fed. R. Civ. P. 37(a)(5)(A). The undersigned does not find the presence of any of those scenarios. Nonetheless, Plaintiffs are entitled to an award of reasonable expenses pursuant to Rule 37(a)(5)(A).

Therefore, it is hereby **ORDERED** that Plaintiffs shall have through and including **September 11, 2015** in which to file an affidavit of reasonable fees and costs incurred in making and arguing their Motion to Compel, as well as any supportive documentation or argument to justify the amount of fees and expenses requested. *See Robinson v. Equifax Information Services, LLC,* 560 F.3d 235, 243-44 (4th Cir. 2009). Within **fourteen (14) days** after Plaintiffs have filed the aforementioned documents,

Ford shall file a response either agreeing to the amount requested, or objecting to specific fees or costs. Ford is hereby notified that the failure to file a response shall be deemed an agreement with the representations and arguments of Plaintiffs.

### III. Conclusion

In summary, the Court **GRANTS** Plaintiffs' Motion to Compel, (ECF No. 536),[5] to the extent that it requests the Court to order Ford to provide a more detailed ASO privilege log. The Court **ORDERS** Ford to revise and supplement its privilege log in accordance with this opinion and Rule 26(b)(5)(A). The Court **DENIES** Plaintiffs' request for sanctions under Rule 37(b)(2), **DENIES** the request to find a waiver of the privilege by Ford and to compel production of the withheld documents, but **GRANTS** an award of reasonable expenses incurred in bringing the instant Motion to Compel.

The Clerk is directed to file a copy of this Order in all three actions and provide a copy of this Order to counsel of record and any unrepresented party.

**ENTERED:** August 28, 2015

_____
Cheryl A. Eifert
United States Magistrate Judge

---

[5] ECF No. 451 in *Burnett v. Ford Motor Company,* Case No.: 3:13-cv-14207, and ECF No. 410 in *Burd V. Ford Motor Company,* Case No.: 3:13-cv-20976.